## WILSON v ROMEOS
### OPINION OF THE COURT

1. VENDOR AND PURCHASER—MORTGAGES—FHA TERMS—POINTS—MORTGAGE PREMIUM.

   The euphemism "on F.H.A. terms" in an agreement to sell real property can hardly have been understood by the sellers to require them to pay a premium to induce a mortgage company to make an FHA mortgage to a prospective purchaser; a seller has no legal obligation, absent the terms of a binding contract, to pay "points", the common term for a mortgage premium.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 55 Am Jur, Vendor and Purchaser §§ 6, 14, 15.
[2] 12 Am Jur 2d, Brokers § 83
[3] 46 Am Jur 2d, Judges §§ 21, 41.
[4] 16 Am Jur 2d, Constitutional Law §§ 544, 558.
[5] 49 Am Jur, Specific Performance §§ 40, 92, 93.
[6] 49 Am Jur, Specific Performance §§ 6–8.

2. Brokers—Real Estate Brokers—Meeting of Minds—Points.

A real estate broker has an obligation to see that there is a meeting of the minds of both buyer and seller on all material matters in a contract for the sale of real property; where a contract is silent on the question of points, no agreement by the seller to pay the premium for a mortgage is inferred.

3. Judges—Circuit Judges—Jurisdiction—Orders—Court Rules.

A circuit judge had no jurisdiction to set aside the order of another judge of the same circuit under the court rule providing in part that "[n]o judgment or order shall be set aside or vacated, and no proceedings under a judgment or order shall be stayed by any circuit judge except the one who made the judgment or order, unless he is absent or unable to act"; his attempt to ignore the order and re-try a settled case was no more effectual (GCR 1963, 529.2).

Opinion for Dismissal

Black, Swainson and Williams, JJ.

4. Constitutional Law—Due Process—Civil Litigants.

*Civil litigants as well as professional criminals are entitled to due process of law (US Const, Am XIV, § 1).*

5. Specific Performance—Equity—Tender—Conveyance.

*Failure of plaintiffs to tender into court, pursuant to a consent judgment, the amount, or any part thereof, they claim they agreed to pay in return for the conveyance of real property, continuing more than four years, has left the defendants with no equitable obligation to convey, no matter the original merits of plaintiffs' action for specific performance.*

6. Specific Performance—Equity.

*The remedy of specific performance is a matter of grace rather than of right and whether or not specific performance will be granted is determined by the particular circumstances of each case; it may not be arbitrarily refused but it will not be decreed where so doing would be unjust or inequitable.*

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Quinn and Danhof, JJ., affirming Oakland, Clark J. Adams, J. Submitted November 3, 1971. (No. 23 October Term 1971, Docket No. 52,540.) Decided July 26, 1972.

29 Mich App 89 reversed.

Complaint by Ocie Wilson and Willie M. Wilson against Sotirios Romeos and Muriel Romeos for specific performance of an agreement to sell real property or, in the alternative, damages for breach of contract. Judgment for plaintiffs granting specific performance. Defendants appealed to the Court of Appeals. Affirmed. Defendants appealed to the Supreme Court. Remanded to the Court of Appeals with directions. See 383 Mich 773. Affirmed. Defendants appeal. Reversed and remanded.

*Hampton, Snavely & Ranno,* for plaintiffs.

*Cartsos, Christi & Rosati,* for defendants.

T. E. BRENNAN, J. This is an action for specific performance of an agreement to sell real estate.

The facts are complicated by the hectic course of these proceedings through the courts. We will begin at the beginning.

Defendants, Sotirios Romeos and Muriel Romeos, his wife, are the owners in fee simple of certain real estate located in Pontiac. The parcel of land consists of a residential lot, on which is situated the defendants' home.

In October of 1965, defendants entered into an agreement with one Wyman Lewis, a licensed real estate broker, to list their home for sale for a period of 90 days. The listing price was $11,500 on F.H.A. terms.

On December 23, 1965, Mr. and Mrs. Romeos agreed to sell their house to the plaintiffs, Ocie Wilson and Willie M. Wilson, his wife. The written memorandum of agreement was executed upon a

familiar printed form, published by Abstract and
Title Guaranty Division of Lawyers Title Insurance
Corporation.

This form of purchase agreement contains four
optional provisions by which the terms of sale may
be described. The agreement of the parties shows
that option "B" was selected. That paragraph is
entitled *"Cash Sale With New Mortgage."* It
provided that the sale was to be consummated by,

"Delivery of the usual Warranty Deed conveying
a marketable title. Payment of purchase money is
to be made in cash or certified check. Purchaser
agrees that he will immediately apply for a F.H.A.
approved mortgage in the amount of $11,150.00
and pay $350.00 down plus mortgage costs, prepaid
items and adjustments in cash. Purchaser agrees
to execute the mortgage as soon as the mortgage
application is approved, a closing date obtained
from the lending institution, and, if applicable, final
inspection of the property by the Veterans
Administration or F.H.A."

In connection with the purchase agreement, Mr.
and Mrs. Wilson paid to the broker the sum of
$800. The agreement called for defendants to
vacate the property on or before April 15, 1966.

Events followed thereafter in the usual course.
Plaintiffs applied for an F.H.A. mortgage at the
Michigan Mortgage Corporation.

On January 17, 1966, the broker, Lewis, delivered
a check to the mortgage company, and on the fol-
lowing day an F.H.A. mortgage commitment was
applied for.

On January 24, 1966, the F.H.A. mortgage com-
mitment was issued and received by Michigan
Mortgage two days later. A credit report was re-
ceived on February 9th. That report disclosed two

old Federal tax liens against the plaintiff. In due course, Mr. Wilson satisfied the Mortgage Company that the liens had been discharged many years before.

Approval of the mortgage application followed on March 15, 1966. A date for closing the transaction was established for May 16, 1966.

Mr. and Mrs. Romeos did not attend the closing. Because of the sketchiness of the record before us, their reasons for refusing to consummate the transaction do not appear.

On June 6, 1966, Mr. and Mrs. Wilson filed their complaint in Oakland County Circuit Court, praying for specific performance of the agreement, or in the alternative, damages for breach of contract.

On June 23, 1966, defendants filed an answer, denying that plaintiffs had tendered the purchase price, and alleging that plaintiffs had breached the agreement.

On June 28, 1966, plaintiffs' counsel made a motion to advance the cause for trial, and the Honorable Phillip Pratt, circuit judge, to whom the matter had been assigned, ordered the cause set down for early pretrial.

On August 19, 1966, the matter was re-assigned to the Honorable James S. Thorburn, who conducted the pretrial hearing and issued his pretrial statement on September 20, 1966.

One year after the execution of the ill-fated purchase agreement, the parties were before Judge Thorburn for the trial of this action. There was talk of settlement.

A stipulation was entered into upon the record in open court. It was:

## "STIPULATION AS TO SETTLEMENT BY PARTIES ENTERED ON COURT RECORDS

(Filed December 23, 1966)

"Stipulation between counsel in the above cause before the Honorable James S. Thorburn, Circuit Judge, at Pontiac, Michigan on December 23, 1966.

"Appearances: William P. Hampton, Esq., Messrs. Hampton & Hampton, 1310 Pontiac State Bank Building, Pontiac, Michigan, appearing on Behalf of the Plaintiffs; Philip N. Christi, Esq., 1880 Penobscot Building, Detroit, Michigan, appearing on behalf of the Defendants.

"William P. Hampton: May it please the Court. Your Honor, after extensive discussions between counsel and the Court in chambers we believe we have reached an accord, and would like to state on the record what that is.

"That would be that the defendant would convey by warranty deed the title to the property, which is the subject of this litigation, being Lot 129, Eastside Park Subdivision, City of Pontiac, and that the closing on this transaction would take place on or before January 30, 1967. That possession would be delivered as the home now is, that is, in as good a shape as it now is, on March 1, 1967. That the appraisal fee, which amounts to $35, in order to get a new appraisal on the property, would be split between the plaintiff and the defendant.

"I believe that pretty well sets forth the terms and conditions. We are asking the Court to retain jurisdiction over this matter until the matter is closed and possession given pursuant to our stipulation.

"*Phil N. Christi:* That is our agreement, your Honor. It is my understanding that the plaintiff will proceed to obtain his own mortgage.

"*The Court:* It goes without saying that notice will be given in reasonable fashion as to the date of

closing, and that the parties will cooperate in working out the sale.

"Now, the Court would add that it is apparent from the agreement which binds both parties that it may be the mortgage which is being obtained by the purchasers is a government-guaranteed mortgage, FHA mortgage. That in those situations very often the requirement is that there be a point situation or percentage of the amount of money to be loaned, which federal law prohibits the purchaser to pay. They impose the obligation as far as the government is concerned, on the seller. However, in this particular contractual agreement the parties did not so agree. The seller therefore is not bound to pay any points.

"If the mortgage cannot be obtained without points payable by the purchaser, then it will be incumbent upon the purchaser to find another source, mortgage or otherwise, to produce that portion of the purchase price which has not yet been paid.

"Is this your understanding, Mr. Hampton and Mr. Christi?

"*Mr. Hampton:* Yes, sir.

"*The Court:* The Court will if it is necessary sign an order pursuant to your stipulation.

"*Mr. Hampton:* Thank you very much, your Honor.

"*Mr. Christi:* Thank you, your Honor."

Pursuant to such stipulation, an order was entered by Judge Thorburn. That order was as follows:

"ORDER

(Filed January 24, 1967)

"At a session of said Court held in the City of Pontiac this 23rd day of December, 1966.

"Present: Honorable James S. Thorburn, Circuit Judge.

"This cause having come on to be heard upon the complaint filed herein and the parties having stipulated upon the record certain agreements;

"It is ordered that the defendants Sotirios Romeos and Muriel Romeos, his wife convey by warranty deed to plaintiffs Ocie Wilson and Willie M. Wilson, his wife, the following described parcel of property located in the City of Pontiac, Oakland County, Michigan, to wit:

"Lot 129, East Side Park, a Subdivision of the part of West ½ of the Northwest ¼ of Section 34, Township of Pontiac, Oakland County, Michigan, as recorded in Liber 21, page 39 of Plats, Oakland County Records.

"Said real estate closing to take place on or before January 30, 1967.

"It is further ordered that said defendants relinquish possession to plaintiffs before March 1, 1967.

"It is further ordered that the appraisal fee of $35.00 required for plaintiffs mortgage be equally divided between the parties, and the plaintiffs shall pay all other mortgage costs.

"It is further ordered that this Court shall retain jurisdiction of this matter until all provisions of this order are complied with.

/s/ James S. Thorburn
Circuit Judge"

January 30, 1967, came and went without a consummation of the sale.

On February 14, 1967, defendants filed a motion "For entry of judgment dismissing the cause."

Plaintiffs countered with a motion of their own. Entitled "PETITION FOR ORDER GRANTING ADDITIONAL TIME TO QUALIFY FOR MORTGAGE AND FOR RECONSIDERATION OF PREVIOUS ORDER" it represented:

"1. That pursuant to an order of this Court entered on December 23, 1966, a real estate closing

was to be held on the sale of Lot 129 East Side Park Subdivision, City of Pontiac on or before January 30, 1967.

"2. That pursuant to said order, the defendants were to pay one-half of the appraisal fee of $35.00 inasmuch as plaintiffs had to obtain a new appraisal of the home.

"3. That although demanded of defendants by plaintiffs the defendants have not yet paid their share of said appraisal fee.

"4. That plaintiffs have had difficulty in obtaining a new mortgage due to the Courts previous orders that plaintiffs pay the F.H.A. points which plaintiffs contended then and do now contend is contrary to Federal law which requires the seller pay the points.

"5. That this matter has not been closed and the date set for closing by this Court has now passed."

The two motions came on to be heard on February 27, 1967. Counsel appeared before the Honorable Clark J. Adams, the third circuit judge to lay hands on the matter. We find no record in the circuit court file of any order re-assigning the matter to Judge Adams, though it has been represented to this Court that the action was so re-assigned as part of an annual re-distribution of the workload of the 6th circuit.

Understandably, Judge Adams found it necessary to acquaint himself with the background of the case. Just as understandably, though unfortunately, he concluded that Judge Thorburn had been without authority to enter the January 24, 1967, order.

Judge Adams did not act on either of the submitted motions. Instead, he declared the order of December 23, 1966 (formally entered January 24, 1967) set aside, and set the matter down for immediate trial.

More time passed. On June 16, 1967, counsel for plaintiffs filed a motion for entry of an order carrying out the oral decision of February 27, 1967. The motion was opposed by defendants. On June 26, 1967, counsel again appeared before Judge Adams. Once again, the matter was thrashed out, it being understandably necessary for counsel to retell the story of the litigation. The June 26th hearing came to an even less definitive termination than the February 27th hearing.

No order setting aside the order of Judge Thorburn was entered.

More time went by. On April 30, 1968, the case was called again before Judge Adams. This time the matter appears to have been noticed for trial.

The record shows that defendants were represented by counsel. The record also shows that counsel for the defendants took no part in the proceedings, and it was represented to this Court on oral argument that counsel attempted to dissuade the court from proceeding and failing to do so, left the courtroom.

At the conclusion of the April 30th proceedings, the court rendered its opinion as follows:

"*The Court:* The Court is satisfied with the proofs, finds first that the parties in this litigation, Plaintiffs and Defendants, entered into an agreement to buy and sell the premises known as 129 East Park Subdivision, City of Pontiac, on December 23, 1965. The agreement had nothing objectionable in it, nothing unusual. It's an enforceable agreement and the consideration recited of eight hundred dollars, as the proofs indicated, were actually paid to the real estate broker.

"The Court further finds that the delay in closing the matter into the early part of 1966 was not through the fault of the Plaintiff. As a matter of fact, as I have already indicated, there is no precise

date fixed in the agreement. It does read in part that the Plaintiffs, who were the purchasers, shall immediately apply for an F.H.A. approved mortgage. This they did. There [*sic*] were not immediately accepted, but that was the product of F.H.A. investigation and not the fault of the Plaintiff.

"The Court further finds that the Plaintiff at all times was ready, willing and able to close the transaction, but the Defendant delayed the transaction for reasons of their own and therefore the Plaintiffs, having entered into this agreement paid consideration, are entitled now to specific performance of the agreement.

"You may have a Judgment providing for specific performance of the agreement, to carry out the terms of this agreement of December 23, 1965.

"You may have Costs that can be taxed, but when it comes to damages this Court does not believe your proofs justify a cost for the delay because as a matter of fact, although the record doesn't show it, the premises today are probably worth more than at the time the agreement was entered into, so the Plaintiff will probably benefit from the delay. This is not part of the proofs and not a finding of the Court, but it is a finding of the Court there is no proof of damages to justify them."

Judgment was entered on May 9, 1968. It provided, in part:

"This cause having come on to be heard upon the pleadings on file and the proofs taken therein as argued by counsel, and upon which it appears to the Court by such pleadings and proofs that the agreement mentioned in the complaint in this cause made by and between said plaintiff and defendant and bearing the date of the 23rd day of December, A.D. 1965, and whereby said defendant agreed to sell the said plaintiffs the said land described in the said agreement as follows:

"Lot 129 Eastside Park, a subdivision of part of West 1/4 of the Northwest 1/2 of Section 34, Township of Pontiac, Oakland County, Michigan as recorded in Liber 21, Page 39 of Plats, Oakland County Records. [*sic*] "for the sum certain of $11,500.00 as full payment and that said plaintiff are ready, willing and able to perform their part hereof.

"NOW THEREFORE, in consideration thereof,

"IT IS ORDERED, ADJUDGED AND DECREED that this Court doth hereby ORDER, ADJUDGE AND DECREE that the said agreement be performed and that said defendant do fully make, execute and deliver upon tender by the said plaintiff a good and sufficient deed of conveyance of said land and premises described in the said agreement as hereinbefore set forth. Such deed to be approved by the Honorable Clark J. Adams, a Circuit Court Judge of said County of Oakland in case the parties differ in relation thereto."

On appeal, the Court of Appeals affirmed. 18 Mich App 232 (1969). We remanded with direction to pass upon the issue of sufficiency of tender. The Court of Appeals affirmed again.

So here we are.

At the outset we are moved to observe that this litigation is a tragedy of first magnitude.

Mr. and Mrs. Wilson and Mr. and Mrs. Romeos are ordinary folks, engaged in a business transaction of great importance to them as people. Selling a home or buying a home are among the most far-reaching decisions that most of us make in our lives.

If ever there was a business transaction which ought to go off smoothly; if ever there was a kind of litigation which ought to be avoided, or if unavoidable, ought to be disposed of with dispatch, with certainty and with kindliness to both sides, it is this case.

These people—both plaintiffs and defendants— have certainly had a lot of hard luck.

We yearn to thunder a final, just, simple and soothing conclusion. That our judgment may not be such is cause for grief. But in light of what we must do, some critical observations are in order, lest these unfortunate litigants and others like them be further made to suffer.

We begin with the real estate broker. He took a listing on defendants' house, agreeing to sell it for $11,500. Whatever the euphemism "on F.H.A. terms" was intended to convey, it can hardly have been understood by Mr. and Mrs. Romeos to require them to pay a premium to induce a mortgage company to make an FHA mortgage to a prospective purchaser.

We suppose that the broker thinks he has earned his commission, since he "sold" the house for the listing price.

He should be disabused of the idea. A seller has no legal obligation, absent the terms of a binding contract, to pay "points", the common term for a mortgage premium. A sale at $11,500 *less points* is not a sale at $11,500.

A real estate broker has an obligation to see that there is a meeting of the minds of both buyer and seller on all material matters in the contract. Where a contract is silent on the question of points, no agreement by the seller to pay the premium is inferred.

With such a misunderstanding built in, it is no surprise that the sale was not consummated when first scheduled, and ultimately ended in litigation.

In court, things began auspiciously enough, with counsel seeking early disposition. Then came printed-form pretrial statements perfunctorily filled in by counsel and court.

"There does not appear to be likelihood of settlement at this time."

The case cried for settlement. Seasonable settlement. Merciful settlement.

And indeed settlement came. True it was late; three months after pretrial. But it came. In open court. On the record. Reduced to writing and incorporated in a formal order of the circuit court for Oakland County.

But it was a hasty settlement, pregnant with the embryo of its own defeat. Accurately, the circuit judge concluded that the defendants were not obliged to pay the mortgage premium. Unrealistically, he concluded that the plaintiffs should be ordered to do something that was neither legally permissible nor physically possible in today's mortgage market. Under Federal law, Mr. and Mrs. Wilson could not pay the mortgagor's premium. And everyone in court should have realized that getting an FHA mortgage without payment of the premium was an impractical pipe dream.

Nonetheless, it was so ordered. Both counsel agreed. Another case was off the docket.

When the purchaser-plaintiffs failed to deliver the impossible, the lawyers predictably returned to court.

They filed motions. But the court—another judge now sitting—did not rule on their motions. No orders granting or denying them were ever entered.

Concern for the equality of the division of the judicial workload came ahead of concern for the people whose litigation begged for attention. The matter was not returned to the judge who entered the order of settlement. He might even then have been able to iron out his own hasty action.

Instead, with no order denying the motions of counsel entered, no order setting aside the settle-

ment signed, the matter was set for trial, a second time.

Even then, the Romeos and Wilsons were denied their thrice delayed chance for justice. Counsel for defendants walked out, leaving the trial judge, and in turn the appellate courts with a record which was completely self-serving and utterly barren of any reference to the point of fundamental disagreement—the mortgage premium. We have nothing in the record but the conclusionary statement of the real estate broker—clutching the Wilsons' deposit money and eyeing a commission from the Romeos—that the purchaser is ready, willing and able to buy.

That should be about enough wrist-slapping for the nonce.

Our disposition will be brief enough.

GCR 1963, 529.2 provides:

"No judgment or order shall be set aside or vacated, and no proceedings under a judgment or order shall be stayed by any circuit judge except the one who made the judgment or order, unless he is absent or unable to act. If the circuit judge who made the judgment or order is absent or unable to act, an order vacating or setting aside the judgment or order or staying proceedings under the judgment or order may be made by any of the other judges of the circuit or any judge assigned to the circuit."

Under that rule, Judge Adams had no jurisdiction to set aside the order of Judge Thorburn; his attempt to ignore the order and re-try this settled case was no more effectual.

The matter is remanded to Judge Thorburn in Oakland Circuit Court, with instructions *sua sponte* and forthwith to summon counsel before him and

make a final disposition of the cause, in accordance with this opinion.

Costs will not be awarded, though indeed if legislative restitution, such as is occasionally awarded the victims of miscarriages of criminal justice were available in civil actions as well, we would be tempted to recommend it here.

T. M. KAVANAGH, C. J., and ADAMS and T. G. KAVANAGH, JJ., concurred with T. E. BRENNAN, J.

BLACK, J. (*for dismissal of action, with prejudice*). In these days of feverish appellate concentration upon a steady parade of criminal appeals, reappeals, post-conviction proceedings, *Walker* hearings, delayed motions for new trial and all other of our newly stylish fashions of criminal justice, it may seem strange to suggest that civil litigants as well as professional criminals are entitled to due process of law.[1]  Here two plaintiffs and two defendants, opposed in a typically equitable action for specific performance, all being *really* innocent distinguished from *presumptively* innocent, have been denied the process that was and still is due them. Why? Obviously on account of what now is first place pressure on our trial courts of necessary and unnecessary criminal business to exclusion of the civil litigant and consequent judicial neglect of his property rights. This case is a sad example.

An agreement reached in 1965 by the four parties above, for sale by the two defendants to the two plaintiffs of the home which then, theretofore and yet is legally owned and occupied by the former,

---

[1] "[N]or shall any State deprive any person of life, liberty, or *property*, without due process of law * * * ." US Const, Am XIV, § 1.

remains in legal limbo despite commencement in June of 1966 of this action to compel its performance. What with conflicting judgments entered in circuit and review twice in the Court of Appeals, the action has been neglected shamefully. Now that the ultimate day of reckening has arrived, this Court despite the broad range of its equitable powers finds that it cannot pick up the pieces, for the fashioning of a decree, without doing to all four parties that which courts of equity are supposed to shun. It is known as the injustice of delayed justice, effected by denial of process due and then grossly overdue.

Justice T. E. BRENNAN, along with Division 2 (*Wilson* v *Romeos,* 18 Mich App 232 [1969][2] and 29 Mich App 89 [1970]), has described vividly the delayed and neglected trip this cause has taken back and forth in all three courts. I think it is time now to end it all, by entry here of a final decretal judgment, rather than remand for possibly more lateral passing in the circuit court.

In December of 1966, for better or worse, the parties stipulated to entry of a consent judgment. A copy of that judgment is annexed as an appendix. Its provisions have never been performed by the plaintiffs, they being the seekers of equity's grace. The reason is that they have never tendered to defendants the amount—or any part thereof—*they* claim *they* agreed to pay in return for the conveyance requested by their complaint. That failure of performance, continuing more than four years, has left the defendants with no equitable obligation to convey, no matter the original merits of plaintiffs'

---

[2] Leave granted with remand for determination of issue "whether plaintiffs have proved their right to specific performance by the introduction of sufficient and proper evidence of tender or ability to perform" (383 Mich 773).

action. To secure what the consent judgment provided for them plaintiffs needed but *tender* into court the total amount payable according to their view, and to make such tender on or before January 30, 1967 or, if granted by the court, within such further time as might be allowed for closing. Instead, plaintiffs filed, February 24, 1967, a "Petition for order granting additional time to qualify for mortgage and for reconsideration of previous order." That petition resulted in what Chief Judge LESINSKI admirably understated, that is, "an unfortunate history of litigation" (29 Mich App 90).

I hold that plaintiffs have failed for years to perfect the right they obtained, by the stipulation and judgment of 1966. Specific performance is a matter of grace and not of right. See the long list of Michigan cases cited to the point in 16 Callaghan's Michigan Digest, Specific Performance, § 3, pp 311–313, and current supplement pp 93–94.

"The remedy of specific performance is a matter of grace rather than of right. *Mowat* v *Walsh,* 236 Mich 391 [1926]. Whether or not specific performance will be granted is determined by the peculiar circumstances of each case. *Farrell* v *Hannan Real Estate Exchange,* 251 Mich 669 [1930]. It may not be arbitrarily refused (*Gregory* v *Olde,* 218 Mich 187 [1922]); but it will not be decreed where so doing would be unjust or inequitable. *Brear* v *Baumgartner,* 249 Mich 633 [1930]." (*Worsham* v *McCall,* 259 Mich 630, 632 [1932].)

I would dismiss the action, with prejudice but without an award of costs.

SWAINSON and WILLIAMS, JJ., concurred with BLACK, J.

*APPENDIX*

(Consent Judgment Entered December 23, 1966)

At a session of said Court held in the City of Pontiac this 23rd day of December, 1966.

Present: Honorable James S. Thorburn, Circuit Judge.

This cause having come on to be heard upon the complaint filed herein and the parties having stipulated upon the record certain agreements;

It is ordered that the defendants Sotirios Romeos and Muriel Romeos, his wife convey by warranty deed to plaintiffs Ocie Wilson and Willie M. Wilson, his wife, the following described parcel of property located in the City of Pontiac, Oakland County, Michigan, to wit:

Lot 129, East Side Park, a Subdivision of the part of West 1/2 of the Northwest 1/4 of Section 34, Township of Pontiac, Oakland County, Michigan, as recorded in Liber 21, page 39 of Plats, Oakland County Records.

Said real estate closing to take place on or before January 30, 1967.

It is further ordered that said defendants relinquish possession to plaintiffs before March 1, 1967.

It is further ordered that the appraisal fee of $35.00 required for plaintiffs' mortgage be equally divided between the parties, and the plaintiffs shall pay all other mortgage costs.

It is further ordered that this Court shall retain jurisdiction of this matter until all provisions of this order are complied with.