# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH MORRISSETTE,

      Plaintiff-Appellee,

v

JOHN DOE,

      Defendant,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellant,

and

LAWRENCE C. FALZON,

      Appellee.

UNPUBLISHED
July 18, 2017

No. 331941
Wayne Circuit Court
LC No. 13-009695-NI

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Although this is fundamentally a no-fault case, this interlocutory appeal concerns a specific procedural issue. Defendant State Farm Mutual Automobile Insurance Company (State Farm) appeals by leave granted the orders of Wayne Circuit Judge Susan L. Hubbard, which granted motions to quash State Farm's re-notice of taking the depositions of non-parties Lawrence Falzon and Clem Barney. The case was initially assigned to Wayne Circuit Judge Lita M. Popke, but during the course of the proceedings her civil docket was reassigned to Judge Hubbard. Judge Popke had ordered Falzon to appear for a deposition, but Judge Hubbard concluded that the deposition was irrelevant and granted Falzon's motion to quash the taking of his deposition. Judge Hubbard also granted Barney's motion to quash on the same grounds; Judge Popke had not expressly ordered Barney to appear for a deposition but she had ruled that his role in the case was relevant. The only question raised on appeal is whether Judge Hubbard had the authority to reverse or rescind Judge Popke's earlier orders. We affirm because we conclude that Judge Hubbard did indeed possess such authority.

-1-

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff Kenneth Morrissette was injured when he was crossing Grand River Avenue in Detroit, Michigan, and was struck by a hit-and-run driver. He was admitted to the emergency room and was discharged after a few hours with a prescription for pain medication and the small cut near his eye having been sutured. Morrissette described in his deposition that he received a number of telephone calls within hours of the accident, all from lawyers soliciting him as a client.[1] When someone from an entity called Legal Genius called, Morrissette was ready to talk to someone about taking his case. Although the person told Morrissette that he was a representative of the law firm that would handle the case, Morrissette was then contacted by Falzon, who is a partner of Wigod & Falzon P.C. Then Morrissette received a call from someone named "Clem," who identified himself as an attorney with Wigod & Falzon. Clem advised Morrissette to see Dr. Irwin Lutwin for treatment; without this recommendation, Morrissette would not have sought treatment from Lutwin.

Morrissette filed suit against John Doe for his injuries and work-loss damages and against State Farm—Morrissette's own insurer—for uninsured motorist and personal protection insurance benefits, alleging that he suffered shoulder and spinal injuries, among others. In the course of discovery, State Farm sought to depose Falzon, but twice Falzon did not appear for the taking of his deposition. In response to State Farm's subsequent motion to show cause, Falzon filed an affidavit stating that "on no occasion was [Morrissette] solicited by this law firm," "that the law firm of Wigod & Falzon, P.C. has never employed an attorney by the name of Clem," and "[t]hat this law firm [*sic*] nor the lawyers in it have ever referred any client to a Dr. Lutwin and in fact, [Morrissette] was already seeing Dr. Lutwin when he became a client of this firm."

State Farm argued that Falzon's testimony regarding his firm's solicitation of clients and referral of clients to medical providers was not privileged and was "relevant and extremely likely to lead to the discovery of admissible evidence regarding the reasonableness and necessity of the medical treatment provided to Morrissette." Falzon responded that the no-fault act controlled and limited discovery to "the history, condition, treatment, and dates and costs of treatment of the injured person," and that State Farm's request exceeded the scope of permissible discovery. The trial court—Judge Popke—agreed with State Farm and found that the issue of solicitation was "relevant to whether the services that are provided are reasonable and necessary and arising out of the automobile accident, and very relevant to any defense that the insurance company would have to [Morrissette]'s claims." Accordingly, she granted State Farm's motion.

Falzon then filed motions for a protective order, for stay pending exhaustion of appellate remedies, and for reconsideration. At a hearing on Falzon's motion for a protective order, Falzon's counsel argued that a medical referral to a doctor was a strategic decision covered by the attorney-client privilege. At a continued hearing, Judge Popke ruled that the alleged referral

---

[1] At the time, directly soliciting someone who had been involved in an automobile accident immediately after the accident was not illegal, but as of January 1, 2014, it is not only an ethical violation (see MRPC 7.3), it is a misdemeanor punishable by up to a year in jail and a fine of up to $60,000. MCL 750.410b.

to Lutwin was not privileged and that "the issue of whether or not [Falzon] referred this gentleman for any kind of medical treatment is relevant. I think [Falzon's] affidavit and the denials, relevant. I think who Clem is, relevant." The court thus arranged for Falzon's deposition to take place at the courthouse and ordered Lutwin to appear for a deposition.

Falzon sought leave to appeal Judge Popke's order granting State Farm's motion to compel his deposition. This Court denied leave,[2] and Falzon filed an application for leave to appeal in the Michigan Supreme Court. While the case was pending on application in the Michigan Supreme Court, however, Judge Popke's civil docket was reassigned to Wayne Circuit Judge Susan L. Hubbard. Soon after the reassignment, State Farm moved to show cause why Legal Genius should not be held in contempt because its representative avoided the taking of his deposition. At a hearing on the motion, Judge Hubbard announced that she believed Legal Genius was in a position similar to that of Falzon, so she was inclined to grant State Farm's motion. However, because Falzon's application was pending before the Michigan Supreme Court, Judge Hubbard ruled that the order requiring a representative of Legal Genius to appear for the taking of a deposition would "not proceed until such time as the Michigan Supreme Court rules on [Falzon]'s application for leave to appeal[.]"

On September 9, 2015, the Michigan Supreme Court denied Falzon's application for leave to appeal. *Morrissette v Doe*, 498 Mich 875; 868 NW2d 906 (2015). Legal Genius filed a motion for a protective order and State Farm re-noticed Falzon's deposition and moved to compel the deposition of a representative of Legal Genius. At a hearing on the motions, Judge Hubbard asked for a summary of what happened with Falzon's appeals, and when informed that both Courts had denied leave from Judge Popke's ruling, she stated:

> Well I'm Judge Hubbard, and I have a different ruling. I do not understand any relevance to the plaintiff's claim in trying to depose a non-party who apparently was somehow involved with the solicitation, and you're claiming it's unethical, but why would[n't] you go to the AGC, Attorney Grievance Commission? This is not relevant at all to the plaintiff's claim.

State Farm pointed out that the hearing was about compelling the deposition of a representative of Legal Genius and that Judge Popke had already ruled on Falzon's deposition, to which Judge Hubbard responded, "Well, I'm setting aside that ruling. And I'm entering a new ruling, that it's not relevant. And I'm not ordering the deposition of [Falzon], who is a non-party to this case, because his deposition is not relevant to plaintiff's claim." Judge Hubbard explained that she was "sua sponte raising the issue in light of your motions" and was "setting aside my order and I am ruling today and requesting a new order be issued, finding that the deposition of [Falzon] is not relevant to plaintiff's claim, and therefore, I am not ordering that he be produced for a deposition." Ultimately, Judge Hubbard said she was denying the motion to compel a representative of Legal Genius to appear for a deposition and denying as moot the motion for a

---

[2] *Morrissette v Doe*, unpublished order of the Court of Appeals, entered May 14, 2015 (Docket No. 324574).

-3-

protective order. Judge Hubbard said, however, that she would allow State Farm to brief the issue of the relevance of Falzon's deposition.

State Farm once again re-noticed the taking of Falzon's deposition, and Falzon responded with a motion to quash. State Farm then filed a response to the motion to quash as well as a "Motion for relief from order," arguing that Judge Hubbard's order denying its motion to compel the deposition of a Legal Genius representative due to irrelevance was entered contrary to MCR 2.613(B), which prohibits a coequal judge from setting aside or vacating another judge's order unless the original judge is absent or unable to act. State Farm argued there was no indication that Judge Popke was unavailable because she was still a sitting judge.

At a hearing on Falzon's motion to quash, Falzon argued that his deposition was irrelevant to the issue of Morrissette's medical treatment. Judge Hubbard pointed out that Falzon was not engaged in "forum shopping," noting that

> [t]his is an issue of a court directive, transferring Judge Popke's docket to myself. This is an issue of me taking on a new docket, and the first week having this motion before me, and really wanting to honor the previous judge's order. However, as the weeks went by and more motions were filed in this case, the court became much more familiar with the legal issues before it. And at this time the court always has the right to correct its orders.

Accordingly, Judge Hubbard granted Falzon's motion to quash.

At some point, State Farm also sought to depose Clem Barney, and the attorney representing the non-parties filed yet another motion to quash. State Farm argued that Judge Popke ruled that the "steering" of a patient's medical treatment was not protected by attorney-client privilege, and Morrissette testified that "Clem" told him to treat with Lutwin. Counsel for the non-parties argued that this presented the same situation as the depositions of Falzon and Legal Genius, which Judge Hubbard had already agreed to quash. Judge Hubbard reiterated her decision that "[w]hat's before the court is a case, an NI case. Okay. It's not a case involving the steering of the legal business. That's my whole point." State Farm reminded the court that it had yet to issue an order regarding State Farm's motion for relief from order, and the court complained that it had "nine hundred cases on our docket," but promised to have the clerk "check up on it." Thereafter the court issued an order granting Barney's motion to quash.

## II. STANDARDS OF REVIEW

The interpretation and application of the court rules is a question of law subject to de novo review. *Colista v Thomas*, 241 Mich App 529, 535; 616 NW2d 249 (2000). Likewise, "[t]he scope of a trial court's powers is also a question of law reviewed de novo on appeal." *Hill v City of Warren*, 276 Mich App 299, 305; 740 NW2d 706 (2007). A trial court's decision regarding discovery is reviewed for an abuse of discretion. *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). The motion to quash the taking of Falzon's deposition is in substance a motion to reconsider Judge Popke's earlier order granting State Farm's motion to show cause; in that context, the trial court's decision to grant the motion

for reconsideration is reviewed for an abuse of discretion. *Kokx v Bylenga*, 241 Mich App 655, 658; 617 NW2d 368 (2000).

## III. DISCUSSION

MCR 2.613(B) sets out the limitations on error-correction by one judge of the orders of another judge and provides the following:

> A judgment or order may be set aside or vacated, and a proceeding under a judgment or order may be stayed, only by the judge who entered the judgment or order, unless that judge is absent or unable to act. If the judge who entered the judgment or order is absent or unable to act, an order vacating or setting aside the judgment or order or staying proceedings under the judgment or order may be entered by a judge otherwise empowered to rule in the matter.

The purposes of the rule are the same as that of its predecessor (GCR 1963, 529.2): namely, to ensure that the motion at hand is before the judge most qualified to rule and to prevent so-called "judge shopping," which " 'would obviously detract from the dignity and stability of judicial action . . . .' " *Clemons v Detroit Dep't of Transp*, 120 Mich App 363, 374; 327 NW2d 480 (1982), quoting 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 230. Under MCR 2.613(B), a successor judge has authority to enter whatever orders the original judge could have entered if he or she continued to preside over the case. *Dutton Partners, LLC v CMS Energy Corp*, 290 Mich App 635, 641 n 2; 802 NW2d 717 (2010).

On appeal, State Farm argues that a successor judge must first make a finding that the original judge is absent or unable to act, and Judge Hubbard did not make such a finding in this case. Instead, Judge Hubbard seemed to assume that her role as a successor judge automatically meant Judge Popke was absent or unable to act, even though Judge Popke was still a sitting judge in the Wayne Circuit Court. There is no precedent expressly stating what factors courts must consider when deciding if a judge whose case has been reassigned is "absent or unable to act." In *Wilson v Romeos*, 387 Mich 664, 669-671; 199 NW2d 208 (1972), a judge entered a settlement between buyers and sellers of property, but the settlement included terms contrary to federal mortgage law. Without setting aside the settlement, the case was subsequently reassigned to a successor judge who ordered the case to trial. *Id*. at 672-673. Construing the predecessor court rule to MCR 2.613(B) (i.e., GCR 1963, 529.2), the Michigan Supreme Court held that the successor judge "had no jurisdiction to set aside the order" of the first judge, and the case was remanded back to the first judge to "make a final disposition of the cause[.]" *Id.* at 678-679. No explanation of the reassignment was given, so it is unknown whether the reassignment included the first judge's entire docket or only a few of his cases. Also, although not binding on this Court, MCR 7.215(J)(1), in *People v Watkins*, 178 Mich App 439, 448-449; 444 NW2d 201 (1989), rev'd on other grounds 438 Mich 627 (1991), a trial judge severed two of five defendants from a trial, after which the chief circuit judge reassigned the case to a new judge, who overruled the severance order. On appeal, this Court held that the successor judge's act of overruling the severance order did not violate MCR 2.613(B) because the chief judge had authority to reassign the case under MCR 8.110 and MCR 8.111, and there was no indication of "judge shopping" in the record. *Id.*

State Farm cites several cases that are factually distinguishable involving courts of equal jurisdiction but differing venue handling issues that were related, but collateral, to the original judgment. See *Estes v Titus*, 273 Mich App 356; 731 NW2d 119 (2006), aff'd in part, vacated in part 481 Mich 573 (2008) (involving an attempt to collect a wrongful death judgment by attacking the property disposition of a divorce judgment); *Dodge v Northrop*, 85 Mich 243; 48 NW 505 (1871) (involving a foreclosure adjudged in Kent County challenged as fraudulent in the superior court of Grand Rapids); *Berar Enterprises, Inc v Harmon*, 101 Mich App 216; 300 NW2d 519 (1980) (involving a suit brought in Livingston County to set aside as fraudulent a consent judgment entered in Schoolcraft County). Collateral interference like that referenced in the cases set forth by State Farm is not permitted under MCR 2.613(B), but such interference is not what occurred in this case.[3]

In contrast to MCR 2.613(B), Falzon argues that this case should be decided under MCR 2.119(F), which governs motions for reconsideration and provides the following:

> (1) Unless another rule provides a different procedure for reconsideration of a decision (see, e.g., MCR 2.604[A], 2.612), a motion for rehearing or reconsideration of the decision on a motion must be served and filed not later than 21 days after entry of an order deciding the motion.

> (2) No response to the motion may be filed, and there is no oral argument, unless the court otherwise directs.

> (3) Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error. [Brackets in original.]

---

[3] Although not addressed by the parties on appeal and not binding on this Court, MCR 7.215(J)(1), we note that in *Totzkay v DuBois (After Remand)*, 140 Mich App 374, 380-381; 364 NW2d 705 (1985), and *Moy v Detroit Receiving Hosp*, 169 Mich App 600, 607; 426 NW2d 722 (1988), this Court construed GCR 1963, 529.2, to preclude a reassigned judge from ruling differently than his or her predecessor judge. *Totzkay* and *Moy* involve an artifact of the Wayne Circuit Courts: pretrial judges who make rulings on preliminary matters before handing the case over to a different trial judge. These cases make clear that revisiting a pretrial order by the *trial* judge is not allowed; the *pretrial* judge should consider those orders because the trial judge was not authorized to issue such orders. Thus, these cases do not present the same procedural context as a case, such as this one, that has been reassigned to a coequal successor judge. Moreover, unlike the pretrial/trial judge distinction in these older Wayne County cases, Judge Hubbard took on full responsibility for all aspects of Judge Popke's reassigned cases.

Notably, this rule gives the trial court discretion to grant or deny a motion for reconsideration. MCR 2.119(F)(3). Under the referenced MCR 2.604(A),[4] until the trial court issues a final order in a case, the court has "explicit procedural authority to revisit an order while the proceedings are still pending and, on that reconsideration, to determine that the original order was mistaken[.]" *Hill*, 276 Mich App at 307. Courts may "revisit issues they previously decided, even if presented with a motion for reconsideration that offers nothing new to the court." *Id.*; see also *Kokx*, 241 Mich App at 659 (holding that a trial court did not violate MCR 2.119(F) when it changed its decision to deny summary disposition in response to a motion for reconsideration that "offered no new evidence or argument, but merely revisited the same issue presented in the [original] motion"). *Hill* and *Kokx* did not involve successor judges or parallel courts. However, in *Mikedis v Perfection Heat Treating Co*, 180 Mich App 189, 195, 203-204; 446 NW2d 648 (1989),[5] this Court upheld a successor judge's order setting aside the order of another judge, who had since retired, which granted summary dismissal of two of the complainant's three counts. In dicta, this Court noted:

> An order which does not dispose of all the claims of all the parties is not a final judgment, and the trial court was thus free to modify that decision at any time before entry of final judgment. MCR 2.604(B). Neither final judgment nor an order of remand appears to have ever been entered here, so Judge Murphy, as successor to Judge Roumell, was empowered to reverse that interlocutory order without regard to the time elapsed, simply on the basis of a preference for a more correct adjudication of the rights and liabilities of the litigants. [*Id.* at 204 n 4.]

While remanding the case back to the original judge was apparently possible in *Wilson*, there is no evidence in this case that it would be possible to have Judge Popke rule on any matters in the present case. Nothing in the statutes establishing the business courts precludes a judge with a business-court docket from hearing regular civil cases, see MCL 600.8031 through MCL 600.8047, but given that Judge Popke's entire civil docket was transferred to another judge or judges, it is reasonable to conclude that Judge Popke was "absent or unable to act." Indeed, there would be little point in transferring Judge Popke's pending cases if she was expected to continue ruling on matters in those cases. It would be untenable to have two judges concurrently

---

[4] MCR 2.604(A) states the following:

> Except as provided in subrule (B), an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties, and the order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties. Such an order or other form of decision is not appealable as of right before entry of final judgment. A party may file an application for leave to appeal from such an order.

[5] Again, cases decided before November 1, 1990, are not binding precedent under MCR 7.215(J)(1), but they nevertheless can be considered persuasive authority. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

issuing rulings in the same case under the circumstances present here. And, because the reassignment was made without any input by the parties, there are no indicia of "judge shopping." Therefore, we conclude that Judge Hubbard possessed the same authority that Judge Popke would have had if she retained the case.

The question then becomes whether it would have been an abuse of discretion if Judge Popke reversed an earlier order of hers that had already been entered, reconsidered, appealed to this Court, and appealed to the Supreme Court, with no definitive judgment coming from either appellate court. A trial court can revisit an earlier order and decide to revise it in order to effect a "more correct adjudication." See *Mikedis*, 180 Mich App at 204 n 4. This is allowed as long as the case is still pending regardless of the amount of time that has passed and regardless of whether the new ruling results from a denial of State Farm's motion to compel or a grant of Falzon's motion to quash. See *id*. The absence of an affirmative ruling from an appellate court on the correctness of Judge Popke's order "does not *necessarily* mean that the trial court was 'right' in the sense of having reached 'the only correct result.' " *Hill*, 276 Mich App at 308. In short, there was nothing that prevented a reversal of the earlier order, *unless doing so was an abuse of discretion*. While Judge Hubbard said she found the depositions irrelevant, Michigan generally "follows a policy of open and broad discovery." *Sarkar v Doe*, 318 Mich App 156, 175; ___ NW2d ___ (2016). As noted earlier in this opinion, Judge Hubbard also mentioned in court that her docket seemed a bit overwhelming; however, the issue of the correctness of the reversal is not presently before us, and State Farm can still challenge Judge Hubbard's order on that ground in a later appeal.

Finally, Judge Hubbard's order regarding Clem Barney did not reverse an order of Judge Popke. Although Judge Popke had commented that she found the identity of "Clem" relevant, she did not enter any order related to that issue. See *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009) ("[A] court speaks through its written orders and judgments, not through its oral pronouncements."). Accordingly, there was no basis to object to Judge Hubbard entering an order that did not agree with Judge Popke's comment from the bench.

In conclusion, Judge Hubbard, as successor to Judge Popke through reassignment of the case, had authority to revisit and reverse the earlier order issued by Judge Popke because no appellate court had affirmatively ruled on Judge Popke's order and because the case was still pending with no final order issued.

Affirmed.


/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

-8-