KITA v MATUSZAK

1. EQUITY—SCOPE OF REVIEW—PERJURY.

Equity is precluded from serving as a reviewing court with broader powers of substitute judgment; therefore, mere perjured testimony is not sufficient to permit equitable intervention.

2. EQUITY—PROBATE ORDER—FRAUD—POSITIVE FRAUD—CONSTRUCTIVE FRAUD.

Equity may interfere with a probate order obtained by positive fraud, but not for merely constructive fraud in obtaining the judgment.

3. EQUITY—WILLS—PROBATE ORDER—FRAUD—RES JUDICATA—ADEQUATE REMEDY.

An order of a probate court, admitting a will to probate, is not res judicata in an equitable action to set aside the order because of fraud where the defendant beneficiary had procured and filed a false will and procured the heirs' consent in seemingly innocent fashion; the fraud thus perpetrated was positive and intentional, depriving the plaintiff heirs of an adversary trial, for which the probate court could provide no adequate remedy and an equity court had jurisdiction to exercise its inherent equity powers.

4. EQUITY—LACHES—FRAUD.

Plaintiffs were not guilty of laches where there was no dilatory behavior on their part which operated to the defendant's preju-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur 2d, Equity §§ 141, 142.
[2] 27 Am Jur 2d, Equity §§ 5, 69, 141.
   37 Am Jur 2d, Fraud and Deceit §§ 4, 12.
[3] 27 Am Jur 2d, Equity § 126.
   37 Am Jur 2d, Fraud and Deceit § 325.
[4] 27 Am Jur 2d, Equity § 163.
   37 Am Jur 2d, Fraud and Deceit §§ 416–418.
[5] 57 Am Jur, Wills §§ 368, 403.
   Presumption and burden of proof as to undue influence on testator. 154 ALR 583.

dice, and where the claim against the defendant arose from his own fraud and the success of that fraud placed the plaintiffs in temporary ignorance of their rights causing the lapse of time prior to the assertion of their claim.

5. FRAUD—WILLS—EVIDENCE.

The existence of a fraud on the part of a defendant beneficiary under a will who had filed the will for probate was shown by clear and convincing evidence where a preponderance of evidence indicated that the testator's signature was forged, the will was possibly misdated, hospital records indicated that the testator was in an oxygen tent and semi-comatose for much of the period during which the will was allegedly signed, testimony of the defendant and the attorney who drew up the will was inconsistent and contradictory, the testimony of a witness to the will was equivocal, and the defendant had also attempted to probate a forged will naming himself sole beneficiary of another estate.

Appeal from Wayne, William J. Giovan, J. Submitted Division 1 June 10, 1974, at Detroit. (Docket No. 18353.) Decided August 28, 1974. Leave to appeal denied, 393 Mich —.

Complaint by Adolf Kita, Consul General of Poland and attorney-in-fact for certain Polish nationals, and Richard J. Michael, co-administrator of the estate of John Matuszak, deceased, against Michael Matuszak for the probating of a false will. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Goodman, Eden, Millender, Goodman & Bedrosian (Berry, Hopson, Francis & Mack,* by *Robert W. Kefgen,* of counsel), for plaintiffs.

*Riseman, Lemke & Piotrowski,* for defendant.

Before: J. H. GILLIS, P. J., and ALLEN and ELLIOTT,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

J. H. GILLIS, P. J. Plaintiffs include certain Polish nationals, heirs-at-law of Lucya Remszel, represented by Consul General Adolf Kita, and the co-administrator of a deceased brother's estate. Defendant, Michael Matuszak, Lucya's brother, was the sole beneficiary of her estate, according to Lucya's alleged will. In 1966, plaintiffs complained that defendant had caused a false will to be probated through fraud and deceit. Defendant counterclaimed, charging libel because plaintiffs had alleged commission of criminal acts with no foundation. *Cf. Kita v Matuszak,* 21 Mich App 421; 175 NW2d 551 (1970), *lv to app den* 383 Mich 806 (1970). Jurisdiction did not arise in our courts to determine the counterclaim. *Kita, supra.* After lengthy delays, occasioned in part by appeals to this Court [see also *Lemke v Kita,* 17 Mich App 642; 170 NW2d 263 (1969), *lv to app den* 382 Mich 795 (1969)], trial to the court was had. Judgment was entered for plaintiffs, and damages approximating plaintiffs' intestate shares were awarded. Defendant appeals, alleging 57 grounds of reversible error.

The difficulties of reconstructing events occurring some 14 years earlier were evident throughout this trial. However, a brief recapitulation is essential to issue resolution. Lucya Remszel, nee Matuszak, emigrated from Poland in 1934. She married, remained childless, and worked in her brothers' Hamtramck bakery until her death. Mr. Remszel predeceased Lucya in 1957. Together they had accumulated assets of about $300,000; however, not well-schooled in the advantages of estate planning, neither apparently made any will before terminal illnesses beset them. Lucya Remszel died on July 3, 1959, at approximately 9:15 p.m., of heart failure and pneumonia.

On or about June 23, 1959, Lucya called her brothers' bakery to relate that she was too ill for work. A friend drove her to an appointment with a physician whom she had never before consulted. He ordered her hospitalized immediately. She entered Columbia Hospital, but was transferred to Lakeside General Hospital on June 30, 1959, because her condition had deteriorated. At the time of admission to Lakeside General she signed her name with an "X", a procedure followed when the patient is either physically incapacitated or ignorant of that skill. According to hospital records and the deceased physician's depositional testimony, her condition progressively worsened. She was placed in an oxygen tent "as needed", and was semi-comatose at death.

Plaintiffs claimed that the 1959 will was forged. The circumstances surrounding the will execution are as follows: Apparently defendant Michael Matuszak first visited his sister on July 2 or 3, 1959, several days after she contracted her illness. Attorney Frank Lemke and his secretary, Ann Perecky, also visited the hospital on that day, apparently to draw a will at Lucya's request communicated by Michael. At the time of trial, Frank Lemke was dead. Ann Perecky had suffered a memory lapse. Suffice it to say that critical factual inconsistencies about Mrs. Remszel's physical condition and behavior surrounded the will execution. After Mrs. Remszel's death, hospital personnel found a will bearing Mrs. Remszel's signature, attested by Lemke and Ms. Perecky. On July 7, 1959, the will, handwritten by Mr. Lemke, was filed in probate court. Again, equivocal acts surrounded the filing of the petition. On September 21, 1959, at the hearing defendant testified that decedent left a will. Mr. Lemke testified Mrs. Remszel had signed

the will in the presence of witnesses. Without contest, the will was admitted to probate. Defendant subsequently received assets of $315,000 from a gross estate of $391,000. However, he informed his relatives in Poland that 80% of the estate had been consumed in taxes and attorney fees.

In 1964, defendant falsified a will, naming him sole beneficiary of his brother John's $500,000 estate. He procured signatures of alleged attesting witnesses on a blank sheet of paper. He forged a will dated four days before John's death. While routinely investigating the matter for the Polish Consulate, an attorney discovered the fraud and procured sworn statements from the alleged attesting witnesses. On the date set for the probate hearing, defendant was confronted out of court with the sworn statement. In court, defendant admitted the will had been improperly executed. Suspicions aroused, the attorney investigated the earlier Remszel estate. He procured opinions of two handwriting experts finding the signature on the will a forgery. (One expert later retracted his opinion.) After interviewing Ann Perecky, Lemke's legal secretary, plaintiffs decided to file the instant lawsuit. Ms. Perecky had no recollection of the attestation, except a trip to a hospital on a warm day. Later, she recalled that she had properly attested the will in question, a recollection strangely devoid of further detail, especially when she had never left the office to attest a will nor seen a dying person. On this basis, and after weighing the conflicting testimony of several handwriting experts, the trial judge granted relief to plaintiffs.

On appeal, defendant claims that res judicata bars collateral attack on a probate order. He argues that when a court order is procured through

intrinsic rather than extrinsic fraud, the rule permitting attack on fraudulently procured equity judgments cannot be invoked. He claims that the necessarily perjured testimony of defendant and his attorney is intrinsic fraud not open to collateral attack. Defendant contends further that GCR 1963, 528.2, prevents equity intervention.

A conflicting line of cases expresses somewhat contradictory views of the problem. *Cf. Columbia Casualty Co v Klettke,* 259 Mich 564; 244 NW 164 (1932), *Fawcett v Atherton,* 298 Mich 362; 299 NW 108 (1941), and *Grigg v Hanna,* 283 Mich 443; 278 NW 125 (1938). Whatever the merits of the intrinsic and extrinsic fraud denominations, we think the underlying rationale retains some viability. The apparent distinction precludes equity from merely serving as a reviewing court with broader powers of substitute judgment; hence, mere perjured testimony is not sufficient to permit equitable intervention. *Ombrello v Duluth S S & A R Co,* 252 Mich 396; 233 NW 357 (1930);[1] *Beatty v Brooking,* 9 Mich App 579; 157 NW2d 793 (1968). If equity could be invoked in every case where perjury had been committed, there might be no end to litigation. *Beatty v Brooking, supra.* However, probate orders may be attacked for fraud. *Ewing v*

---

[1] The Court in *Ombrello v Duluth S S & A R Co,* 252 Mich 396, 403; 233 NW 357, 360 (1930), explains:

"It is said in 34 CJ 452:

" 'Equity will not enjoin the enforcement of a judgment at law either on the ground of the insufficiency of the evidence to support it, or the lack of evidence of essential facts, or because of erroneous action of the court in admitting or excluding particular evidence.'

"And in 3 Freeman on Judgments (5th ed), § 1184, with respect to relief in equity from orders and decrees of probate court:

" 'Equity may be resorted to only upon a sufficient showing of some ground for the exercise of equitable jurisdiction such as mistake or extrinsic fraud, and not merely to review the action of the probate court. * * * The fraud which will justify equitable relief against probate orders or judgments must, of course, be extrinsic. Mere perjury or false testimony is not ground for relief.' "

*Lamphere,* 147 Mich 659; 111 NW 187 (1907); *Lewis v Poel,* 376 Mich 167; 136 NW2d 7 (1965). The fraud warranting equitable interference must be positive, not merely constructive fraud in obtaining the judgment. *Grigg v Hanna, supra.* In *Burnham v Kelley,* 299 Mich 452; 300 NW 127 (1941), defendant administrator filed fabricated, incorrect accounts in the probate court. The Supreme Court characterized that act as a fraud upon the court. The probate orders did not bar prosecution of the action. Similarly, defendant's action in procuring and filing a false will constitutes a fraud in obtaining the judgment. The probate court order is not res judicata. Like the administrator in *Burnham,* defendant herein continued his scheme, procuring the heirs' consent in seemingly innocent fashion. In both cases, after once becoming alerted to possible misconduct, the victims acted quickly to protect their rights. Since the fraud perpetrated was positive and intentional, effectively depriving plaintiffs of an adversary trial, for which the probate court could provide no adequate remedy,[2] the court had jurisdiction to exercise its inherent equity powers.

Similarly GCR 1963, 528.3,[3] does not preclude

---

[2] See *Grigg v Hanna,* 283 Mich 443, 455; 278 NW 125, 130 (1938), and cases cited therein, especially *Burgess v Jackson Circuit Judge,* 249 Mich 558; 229 NW 481 (1930); Const 1963, art 6, § 15; MCLA 701.19; MSA 27.3178(19).

[3] GCR 1963, 528.3 provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under sub-rule 527.2; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a

relief. That rule was not intended to limit equity jurisdiction to grant relief sought in an independent equitable action. 3 Honigman & Hawkins, Michigan Court Rules Annotated, p 191; *In re Lowerree,* 157 F2d 831 (CA 2, 1946).

Next, appellant contends that plaintiffs were guilty of laches. Defendant contends that the deaths of Frank Lemke, the attending physician, John Matuszak, and an alleged nurse witness (not attesting the will) are intervening circumstances aside from mere lapse of time, precluding relief. We find no dilatory behavior by plaintiffs which operated to defendant's prejudice. While the attorney and the doctor were deceased at the time of the trial, their depositional testimony was preserved and admitted. Both John's and the nurse's presence would have been valuable. Yet, absent John's death and the attempted fraud surrounding his will, plaintiffs would never have learned of the earlier fraud. We think the trial judge's analysis was correct:

"[A] defendant should not be heard to interpose the defense of laches where the claim against him arises from his own fraud and where * * * the very success of his fraud places the aggrieved parties in temporary ignorance of their rights and thus causes the lapse of time occurring prior to the assertion of the claim. *Chase v Boughton,* 93 Mich 285, 302; 54 NW 44, 50 (1892).

reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment order or proceeding was entered or taken. A motion under sub-rule 528.3 does not affect the finality of a judgment or suspend its operation. *This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in subrule 528.2 above, or to set aside a judgment for fraud upon the court.* Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." (Emphasis supplied.)

And so, where the equitable claim arises from the fraud of the defendant the defense of laches must fall with the proof of the fraud since the defendant may not thereafter lift himself by his own bootstraps of wrongdoing."

Defendant claims the trial court erred reversibly in separating trial of the liability and damage issues. *Osgerby v Tuscola Circuit Judge,* 373 Mich 237; 128 NW2d 351 (1964), limited discretion to separate liability and damages over objection in a jury trial. The considerations attendant may well be distinct in a trial to the court. In any event, since defendant agreed to this procedure, he cannot now be heard to complain.

We turn to the principal issue: whether plaintiffs established by clear and convincing evidence the commission of forgery and perjury. To ascertain the standard of proof, defendant cites *Grigg v Hanna, supra,* 456–457:

" 'As against the living, proof of fraud must be clear and convincing. But when charges of corrupt, fraudulent, and criminal conduct are made against the dead, who have occupied positions of trust, and whose acts have been authorized and confirmed by a court of competent jurisdiction, *the proof must be so clear and convincing as to satisfy every reasonable mind.' Egan v Grece,* 79 Mich 629, 639; 45 NW 74, 77 (1890)."

Yet *Grigg* immediately juxtaposed:

"Though, as said in *Peoples v Evening News Ass'n,* 51 Mich 11; 16 NW 185 (1883):
" 'There are but two classes of cases recognized as requiring different rules of proof; *first,* criminal cases, and *second,* civil cases, or, to speak more accurately, cases not criminal. * * * In cases not criminal, and involving no criminal judgment and punishment, the court cannot require the jury to disregard any prepon-

derance of evidence which convinces them.' " *Grigg v Hanna, supra,* 457.

Since Frank Lemke was not a defendant in this suit, problem of proof as to Lemke is nonexistent. In equity cases, this Court considers the record *de novo,* but does not reverse unless we would have been bound to reach a different result as trier of fact. Applying that standard, we do not reverse. The plaintiffs showed by clear and convincing evidence the existence of a fraud. The possibly misdated will and hospital records indicating Mrs. Remszel was in an oxygen tent and semi-comatose for much of the period, clearly contradict defendant's and Lemke's inconsistent testimony. Further, the secretary's equivocal statements as to her memory, and defendant's conduct in attempting to probate his brother's will, when considered against the preponderating evidence that Lucya's signature was forged, satisfies the burden of proof that evidence of fraud be clear and convincing.

The remaining allegations of error do not merit a discussion and we find no reversible error.

Affirmed. Costs to appellees.

All concurred.