OPINION OF THE COURT
Millard L. Midonick, S.
This is a commitment proceeding under section 384 of the Social Services Law, alleging parental abandonment, brought for the purpose of freeing a minor child for adoption despite the opposition of his natural mother. The mother of the child has appeared by counsel and objects to the commitment of the child for adoption. The putative father, named on the child’s birth certificate, died on March 17, 1974. At the time of the child’s birth in 1971, the mother was married to another man. That man, subsequently divorced from the mother, has been represented in this proceeding by a court-appointed guardian *294 ad litem. He was properly served and stated that he had no interest in the proceeding. Citation was also served upon another man who married the mother in March, 1973. She testified that he had no interest in the proceeding and the court so ruled.
The court finds that the respondent mother has abandoned this child. The evidentiary facts follow:
The infant was born in Manhattan on January 2, 1971. He lived with his mother for three months. His mother then gave him to the care of a friend while she returned to a drug rehabilitation program. The friend abandoned the child and he was brought to the Bureau of Child Welfare on November 16, 1971. He was hospitalized and then admitted to a shelter boarding home on January 4, 1972. He remained there for six months and then was transferred to the custody of the agency, petitioner herein, on June 30, 1972, for foster care supervision. At that time the mother was serving a sentence at the Women’s House of Detention for conviction for unlawful possession of a drug.
Upon her release from prison on October 17, 1972, the mother for a considerable time made no effort to communicate with the agency. She did, however, manage two visits with the child in 1973, the later one in August of that year. Those were the only visits she has had with the infant since his first three months of life. Whatever plans she had to reunite her family at that time never materialized. The mother was convicted of armed robbery in 1975. While she was in prison, a case worker visited her twice, during which visits they discussed surrender of the infant for adoption. She did not communicate with the agency upon her discharge from prison in December, 1975. She was convicted of larceny in January, 1976. Despite these problems, she has continued some educational programs. She wishes to plan to unite her family.
The testimony of the natural mother that she could not visit her son while she was incarcerated does not provide a good reason for her failure to arrange to visit her child, especially since August, 1973 when she was not in prison from time to time.. She has not contributed to his support at any time since he was three months old. The petitioner has proved that this parent had "a settled purpose to be rid of all parental obligations and to forego all parental rights.” (Cf. Matter of Susan W. v Talbot G., 34 NY2d 76, 80; Matter of Maxwell, 4 NY2d 429, 433.) The avowed desire of the mother that the infant *295 have contact with his sisters (whom he does not know) is not an operative parental act and should not be a cause of removing a child from the only home he has ever known. These are the elements of abandonment, and we so find.
Supporting the finding of abandonment, the court recognizes that the following circumstances require termination of parental status for the best interest of the infant: The protracted separation of mother from child, voluntarily or involuntarily, with or without her fault; the mother’s lack of an established household; and the attachment of the child to his foster family who wish to adopt him. For more than five years, the child has been living with these same foster parents.
Rapidly evolving concepts have altered the relative weight given to the rights of natural parents and those of their infant children. The best interests of infants have been thought, and may still be thought, to forbid termination of parental rights unless the infant had been surrendered by the parents for adoption, or had been permanently neglected, or had been abandoned by the parents.
Custody has been taken from or denied to natural parents, as distinguished from termination of parental status leading to adoption, where a parent has been found unfit or where "extraordinary circumstances” exist requiring such separation of parent and infant. (Matter of Bennett v Jeffreys, 40 NY2d 543.) Neither surrender, permanent neglect, abandonment, nor even unfitness was indicated in Matter of Bennett. Matter of Bennett has been loosely accorded some bearing in termination cases despite its clear factual basis in custody only. (Cf. Matter of Amy S., 89 Misc 2d 42; Matter of Patricia A. W., 89 Misc 2d 368; Carrieri, The Foster Child — Major Case Revisited, NYLJ, Nov. 1, 1977, p 1.)
Termination of parental status and rights must be viewed as intrinsically more serious than custodial awards of infants away from parents. Adoption, following termination of natural parental status, is final and not shbject to abrogation except for defects such as fraud or newly discovered evidence. (Domestic Relations Law, § 114.) Contrariwise, custody awards are subject to (a) restoration of parental custody upon change of circumstances (e.g., Ford v Ford, 371 US 187; Ford v Ford: Full Faith and Credit to Child Custody Decrees, 73 Yale LJ 134); and (b) visitation rights following a parent and infant separation by a custody award, but such visitation is rare or nonexistent after termination of parental status, being *296 awarded only with consent of the adoptive parents. (Matter of Raana Beth N., 78 Misc 2d 105; cf. Matter of Abraham L., 53 AD2d 669.)
Despite its finality for both natural parent and infant child, termination of parental status has now been focused on the best interests of the child by legislative overruling of the "flicker of interest” doctrine in Matter of Susan W. v Talbot G. (34 NY2d 76, supra). Since Susan W., the amendment of section 111 of the Domestic Relations Law provides that insubstantial and infrequent contacts by a parent with his or her child, viz., evidence of "flicker”, shall not, of itself, be sufficient as a matter of law to preclude a finding that such parent has abandoned such child. (But cf. Matter of Abraham L., supra, p 670; Matter of Patricia A. W., supra.) The cases last cited indicate how wary are the courts in terminating the parental bonds unless the proof is clear of abandonment or permanent neglect.
Whether this view of the best interests of infant children will preserve parental status even when unfitness or "extraordinary circumstances” exist, is questionable. The constitutional rights of infants to a permanent home with permanent parents, and their right to avoid the limbo of years of foster care, and their right to be shielded from the concern and trauma attending changes of home in the event of changes of circumstances, has been signaled by Rothstein v Lutheran Social Servs. of Wis. & Upper Mich. (405 US 1051). There the Supreme Court ruled that there must be "due consideration for the completion of the adoption proceedings and the fact that the child has apparently lived with the adoptive family for the intervening period of time”. This directive was given by the Supreme Court despite a natural (unmarried) father’s fitness, constant desire to live with and support his child, and his steadfast desire to marry the mother. All these factors were overcome in favor of the adoption by the stepfather following the Supreme Court ruling. (State ex rel. Lewis v Lutheran Social Servs. of Wis. & Upper Mich., 59 Wis 2d 1; 68 Wis 2d 36.) Similarly in Matter of Malpica-Orsini (36 NY2d 568) the natural (unmarried) father was heard, but the best interests of the child required termination of his parental rights without his consent. (Cf. Matter of Tyease J., 83 Misc 2d 1044, 1048; Matter of E. P, NYLJ, June 27, 1977, p 14, col 4.)
Another impediment to adoption has been eliminated by the holding that a foster care, agency need not prove that *297 efforts have been made to strengthen the parent-child ties, in order to make out a case of abandonment. (Matter of Anonymous [St. Christopher’s Home], 40 NY2d 96.) Even where the issue turns to permanent neglect, rather than abandonment, the agency’s failure to strengthen parent-child ties, seems to be disregarded in favor of adoption. (Matter of Patricia A. W., supra.)
In the case at bar, the abandonment being clear, the statutory law of New York is in conformity with the constitutional right of the infant to be accorded termination of parental rights as his best interests require.