*In re* MACLOUGHLIN

Docket No. 77-186. Submitted October 13, 1977, at Detroit.—Decided
April 3, 1978.

In 1968, a son was born to Jerry R. Elliott and Katherine R.
Elliott, who had previously been married and divorced and who
were at the time living together in Arizona, holding themselves
out as husband and wife. The parties later separated, the
mother took custody of the son, and later remarried. The
mother, her new husband, and son moved to Michigan, and in
1973 she commenced an action in Washtenaw County Probate
Court to terminate Mr. Elliott's parental rights in the son. His
rights were terminated after a hearing which he did not attend.
In 1976, Mr. Elliott petitioned the Washtenaw County Circuit
Court to set aside the probate court's termination order, alleg-
ing that the order had been fraudulently obtained, and that he
had not appeared in the probate action because the mother had
assured him that she was not going to continue the action. At
the time the present action was commenced none of the parties
lived in Michigan. The circuit court, Ross W. Campbell, J.,
granted the mother's motions for accelerated and summary
judgment on the grounds that the court had no jurisdiction
over the respondent and that the petitioner was not entitled to
equitable relief because he had not taken the opportunity to
contest the proceedings in the termination of rights· proceeding
in probate court. Plaintiff appeals. *Held:*

1. A defendant who is no longer a resident of Michigan is
precluded from asserting that a Michigan court does not have
jurisdiction over her where she had, while she was a Michigan
resident, previously utilized the Michigan courts to take juris-
diction of and decide the same subject matter as that involved
in the present action.

2. The doctrine of laches must apply to a situation before the
court after the facts have been presented and, therefore, the

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Courts §§ 147, 148.
[2] 27 Am Jur 2d, Equity § 87.
[3] 27 Am Jur 2d, Equity § 20.
[4] 73 Am Jur 2d, Summary Judgment § 27.

trial court's reliance on laches was inappropriate where the court was granting a motion for summary judgment before the proofs of the parties were presented.

3. The defense of laches should not be available to the defendant where the claim against her arises from her own fraud and where the very success of her fraud placed the plaintiff in temporary ignorance of his rights.

4. Summary or accelerated judgment was not appropriate because the plaintiff alleged fraud upon himself and upon the probate court, and the trial court should at least hear the basis for such claims and inquire into their validity.

Remanded for further proceedings.

1. COURTS—JURISDICTION—PARTIES—NONRESIDENT—PRIOR ACTION.

A defendant who is not a resident of Michigan is precluded from asserting that a Michigan court does not have jurisdiction over her for the purposes of a hearing where she had, in a previous action, utilized the Michigan courts to take jurisdiction of and decide the same subject matter as that involved in the present action.

2. EQUITY—LACHES—SUMMARY JUDGMENT—FACTS.

The granting of a motion for summary judgment because of laches before the proofs of the parties have been presented is inappropriate because the doctrine of laches must cover the situation before the court after the facts have been presented.

3. EQUITY—LACHES—FRAUD—AVAILABILITY OF DEFENSE.

The defense of laches should not be available to a defendant where the claim against him arises from his own fraud and where the very success of his fraud placed the aggrieved parties in temporary ignorance of their rights and thus caused the lapse of time occurring prior to the assertion of the claim.

4. JUDGMENT—SUMMARY JUDGMENT—ACCELERATED JUDGMENT—FRAUD UPON COURT.

Summary or accelerated judgment is not proper in a case involving custody of a child where custody had previously been determined by the court where it is alleged that the previous action involved fraud upon the petitioner and upon the court; the court should at least hear the basis for such claims and inquire into their validity.

*O'Brien, Moran & Dimond* (by *Thomas H. Blaske),* for petitioner.

*Forsythe, Campbell, Vandenberg, Clevenger & Bishop, P. C.* (by *Donald E. Shelton),* for respondent.

Before: D. E. HOLBROOK, P. J., and N. J. KAUFMAN and J. E. MCDONALD,* JJ.

J. E. MCDONALD, J. Appellant Jerry Robert Elliott and appellee Katherine Renee MacLoughlin were previously married, but were divorced in 1966 in Arizona. Custody of the only child of the marriage, Sean, was granted to appellant-husband.

Subsequent to the divorce, the parties lived together and held themselves out as husband and wife, even though they did not remarry. During this period of cohabitation, a second son, Vaughn, was born on July 26, 1968.

In 1970, approximately two years after the birth of Vaughn, the parties separated and appellee-wife apparently took custody of Vaughn. After marrying her present husband, appellee-wife, her new husband and Vaughn moved to Michigan.

In 1973, appellee commenced an action in Washtenaw County Probate Court to terminate appellant's parental rights in Vaughn, based upon the father's alleged failure to support or visit the child since 1969.

Appellant, Vaughn's father, did not attend the hearing on the petition to terminate his parental rights, and his parental rights were terminated in late 1973.

On August 25, 1976, approximately three years after the original termination order, appellant commenced this independent equitable action in Washtenaw County Circuit Court to set aside the previous probate order of termination of parental

* Circuit judge, sitting on the Court of Appeals by assignment.

rights, stating it had been fraudulently obtained by appellee.

None of the parties were living in Michigan at the time of the commencement of the present case by appellant in the circuit court.

Appellant and his new wife, appellee and her new husband (Vaughn's adoptive father) and Vaughn all reside in Arizona.

Appellant claims that the allegations made by the mother in her 1973 petition to the Washtenaw County Probate Court were fraudulent and that appellee knew they were fraudulent when she made them. Nevertheless, the father did not appear in the matter because appellee allegedly told him that she was not going to continue the action. Contrary to the alleged assurance of appellee, however, the termination hearing was held and appellant's rights were terminated on November 29, 1973.

In 1974, the probate court entered another order confirming the adoption of Vaughn by appellee's present husband.

Appellant did not appeal either order, nor did he seek to have the order set aside in the probate court.

Appellant alleges that there was fraud upon the probate court and invokes the equity powers of the circuit court to set aside the order terminating his parental rights.

Appellee filed a motion for accelerated judgment, claiming that the circuit court lacked personal jurisdiction over her and jurisdiction over the subject matter.

She also moved for summary judgment, alleging that appellant failed to state a claim upon which relief could be granted and that there was no

genuine issue of a material fact upon which relief could be granted.

The transcript of the hearing on December 16, 1976, indicates that there were no exhibits offered and no witnesses testified, however, there were exhibits attached to the petition and affidavits in support of the motions. The hearing consisted entirely of argument by counsel.

On the 12th of January in 1977, there was an order entered entitled "Accelerated and Summary Judgment for Respondent".

On January 19, 1977, a claim of appeal from the order of the circuit court was filed by appellant.

About a month later, on February 22, 1977, a written opinion and order granting respondent's motion for summary judgment was filed by the circuit court.

At the conclusion of argument by counsel at the hearing on December 16, 1976, the court announced that it was ready to rule on the matter, and the transcript reads in part as follows:

"First on the question of jurisdiction, the Court does not feel that it does have personal jurisdiction over the defendant mother or the child for the reason that they are not domiciled in Michigan * * * .

"The Michigan Probate Code does make provisions for re-hearing in the Probate Court. It is true that Courts have the power to set aside actions which they have taken where they have been induced to take those actions by fraud. The Michigan legislature, for very good reason, has set a 20 day limit on re-hearings in Probate Court in adoption cases. I think this bespeaks public policy in these matters. The present action brought here in Circuit Court obviously is an attempt to circumvent or avoid the effect of that statute * * * .

"The plaintiff has slept on his rights. It is now three years later and it would take quite a bit for even on the merits, one would want to set aside a placement, adop-

tive placement of three years duration. I think that laches applies against the plaintiff * * * .

"Here there is no question but what the present plaintiff had—had notice and an opportunity to be heard * * * .

"So for the several reasons I have given under three major headings, specifically first, no jurisdiction; secondly, laches; thirdly, complaint does not state a cause of action. The motion for summary and accellerated (sic) judgment is granted * * * .

" * * * I don't want to get caught in that abyss between the General Court Rule 116 and 117. I suggest be entitled an accellerated (sic) and summary judgment is granted so that we don't have any more technical problems built in than—".[1]

There is no requirement that the appellee be physically present within the state or domiciled within the state before the courts can exercise limited personal jurisdiction over her.

"When we keep in mind that we are dealing not with *general* jurisdiction which is provided for in another part of the statute (MCLA § 600.701 [Stat Ann 1962 Rev § 27A.701]) which would expose a nonresident to suit in Michigan for any cause wherever it arose, but rather with *limited* jurisdiction which exposes a nonresident to suit in Michigan only for a cause which arose out of the relationship serving as a basis for such jurisdiction we see no Federal Constitutional question.

"The courts of those states having 'long-arm' statutes similar to that of Michigan which confer, specifically, limited personal jurisdiction over defendants based on 'the transaction of any business within the state,' have generally construed their statutes as extending the state's jurisdiction to the farthest limits permitted by

---

[1] Hybrid motions for summary or accelerated judgment are not looked upon with favor by courts, *Knapp v Dearborn,* 60 Mich App 18; 230 NW2d 293 (1975).

If courts look with disfavor upon a hybrid motion for accelerated and summary judgment, surely they cannot look with favor upon the granting of motions called "accelerated and summary judgment".

due process." *Sifers v Horen,* 385 Mich 195, 198–199; 188 NW2d 623 (1971).

The appellee made use of the courts of this state to hear her petition to terminate the parental rights of the appellant. Surely if commercial transactions may grant to the court limited personal jurisdiction, it is even more true that the use of the courts by this appellee precludes her assertion that the court does not now have jurisdiction over her for the purposes of a hearing on the very subject matter over which she sought to have the courts of Michigan take jurisdiction and decide.

"It is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Shepler v Korkut,* 33 Mich App 411, 414; 190 NW2d 281 (1971), citing *Hanson v Denckla,* 357 US 235; 78 S Ct 1228; 2 L Ed 2d 1283 (1958).

The doctrine of laches is elastic, and rightly so, for it must cover the situation before the court after the facts are presented, and here, since there has been no opportunity to present proof, the statement by the court that laches applies would appear inappropriate.

" 'A defendant should not be heard to interpose the defense of laches where the claim against him arises from his own fraud and where * * * the very success of his fraud places the aggrieved parties in temporary ignorance of their rights and thus causes the lapse of time occurring prior to the assertion of the claim. *Chase v Boughton,* 93 Mich 285, 302; 54 NW 44, 50 (1892). And so, where the equitable claim arises from the fraud of the defendant the defense of laches must fall with the proof of the fraud since the defendant may not thereafter lift himself by his own bootstraps of

wrongdoing.' " *Kita v Matuszak,* 55 Mich App 288, 295–296; 222 NW2d 216 (1974).

Appellant has objected to the filing by the circuit judge of an opinion one month after the appellant has filed a claim of appeal from the order entered on the 12th of January, which granted both the accelerated and summary judgment of the appellee. The practice of filing opinions after there has been an appeal should not be encouraged, however, in this matter, the February opinion by the circuit court gives some insight into the basis of the decision which is helpful, and it is being considered for that reason.

The February opinion of the circuit court contains the following language:

" * * * the Court concludes that even if all the allegations contained in the petition are assumed to be true, that upon the facts of this case, equitable relief is not warranted. If all statements were made in the respondent's petition for termination, the petitioner had every opportunity to contest their accuracy in the prior proceedings. The petitioner, however, chose not to contest the probate petition. No justification is now offered for this inaction."

Appellant denies he "chose not to contest" the proceedings to terminate his parental rights. He claims he relied on the statement by appellee that there would be no hearing. He claims his detrimental reliance on this fraudulent statement by appellee is his justification for inaction.

The February opinion continues:

"If fraudulent allegations were made in the termination petition concerning petitioner's alleged lack of support for his child, the petitioner should have con-

tested the allegations in probate court. His unexplained failure to respond in the probate court must be weighed heavily against him as must his delay of over two years in commencing the present action. The petitioner offers no valid reason why he should now be allowed to litigate an issue which he should have contested in the prior proceeding."

Again it is our understanding that the petitioner is alleging that the need to contest any allegations in the probate court was eliminated by the claimed assurance given him by the mother that the probate court hearing would not be held. We find it difficult to understand how the trial court can speak of this as an "unexplained failure to respond in the probate court".

It appears that the petitioner alleges that his delay in beginning the present action was based on the fact that his relationship with his son, for all practical purposes, continued after the probate hearing as they had been prior to the probate hearing, in that he was granted visitation rights. Furthermore, petitioner says the "valid reason" why he should now be allowed to litigate this issue that was not contested in the prior proceedings is the alleged fraud on the part of the mother in advising him that the hearing proposed in probate court would not be held and that he relied on this to his detriment.

Further, the opinion of the trial court reads:

"The respondent, on the other hand, has presumably relied on the validity and finality of the unappealed probate order. Her position in a new re-married life in Arizona would be greatly disturbed if the petitioner's request were granted.

More importantly, public policy favors the certainty and permanence of probate court adoption orders because of the psychological injury which may be caused

to the adopted child if the adoption, after having been concluded, is undone."

Public policy does favor the certainty and permanence of probate court adoption orders. However, public policy does not favor the securing of such orders by fraud on the petitioner or upon the court. Since fraud upon both the petitioner and the court is alleged by the petitioner, it would appear that the court should at least hear the basis for these claims and inquire into their validity at an appropriate hearing rather than summarily forming a conclusion at this stage of the proceedings.

The trial judge's opinion goes on:

"The court is quite sympathetic to the natural parent who subsequent to tacit acquiescence in the termination of his legal relationship to the child, changes his mind. People change, and matters to which one was once indifferent can later become a cause for remorse and regret."

Here again the claimed tacit acquiescence in the termination of his legal relationship by the petitioner is vigorously denied and he is claiming that he never has changed his mind; that the termination of his legal relationship was not with his acquiescence, but through the active and deliberate fraud of the mother upon both the petitioner and the court.

In *Berry v Ferrell,* 179 Mich 498; 146 NW 103 (1914), there was an action brought in circuit court to set aside an order of the probate court confirming the adoption of a minor, claiming the order had been obtained fraudulently.

When the complainant appeared in circuit court to offer proof of her charges, the defendant ob-

jected to having a hearing, claiming that the order of adoption made in the probate court had settled the matter and that no appeal had been taken. The circuit court sustained the objection by the defendant, declined to take any testimony, and dismissed the bill of complaint.

The plaintiff appealed and the Supreme Court said:

"We think the trial court should have proceeded to take the testimony.

"The case is remanded to the court below, with directions to hear the case upon its merits." 179 Mich at 504.

We believe the trial court erred in granting appellee's motions and the case is remanded for a hearing upon its merits.