IN THE MATTER OF JOHN PAUL KOZAK

(ZIELDORFF v CATHOLIC SOCIAL SERVICES OF ST CLAIR
COUNTY)

Docket Nos. 78-5520, 78-5521. Submitted June 22, 1979, at Detroit.—
    Decided September 20, 1979.

Shortly after the birth of John P. Kozak his mother and her
    husband petitioned for the termination of their parental rights
    and to terminate the parental rights of the child's natural
    father, whose identity the mother claimed was unknown to her.
    The St. Clair County Probate Court, R. Gerald Barr, J., ordered
    the terminations of rights and placed the child with Catholic
    Social Services of St. Clair County for adoption. The child was
    subsequently placed with unidentified prospective adoptive par-
    ents. William Zieldorff petitioned the probate court for a hear-
    ing on custody and for an order staying adoption proceedings,
    claiming that he was the natural father of John P. Kozak, that
    he had had no notice of the previous court proceedings, and
    that the child's mother and her husband had given false
    testimony regarding the identity of the child's father. He also
    petitioned for an order allowing discovery of the names and
    whereabouts of the adoptive parents. Judge Barr denied both
    petitions, and Zieldorff appeals from both orders of denial.
    *Held:*

    1. Zieldorff's action is not barred by res judicata. Res judicata
    does not bar a request for a rehearing, nor can Zieldorff be
    considered a "party" to the earlier proceeding.

    2. An adoption can be overturned where a case of significant
    fraud can be made out. Because fraud is alleged, the case
    should be remanded for a hearing on the matter.

    Reversed and remanded.

1. ACTION — RES JUDICATA — PARTIES — REHEARINGS.
    The doctrine of res judicata, which bars the relitigation of issues

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judgments §§ 518, 519.
[2] 59 Am Jur 2d, Parent and Child §§ 5, 42.
[3] 2 Am Jur 2d, Adoption §§ 76, 78.

in subsequent actions between the same parties or their privies to a former adjudication, does not bar a request for a rehearing or an action by a plaintiff who was not a party to the earlier proceeding.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NOTICE.

Generally, statutes requiring service of notice to parents in cases involving the termination of parental rights must be strictly construed.

3. ADOPTION — FRAUD — OVERTURNING ADOPTION.

An adoption may be overturned if a case of significant fraud is made out; the fraud which justifies interference with a probate court order must be fraud in obtaining the order and must be positive, not merely constructive, fraud.

*Canyock & Thumm, P.C.* (by *Richard L. Schafer),* for William Zieldorff.

*Cummings, Thomas, McColl & McNamee,* for Catholic Social Services of St. Clair County.

Before: DANHOF, C.J., and BASHARA and J. C. DANER,* JJ.

BASHARA, J. This unusual case involves a direct appeal from a probate court order denying plaintiff's petition for a custody hearing and a stay of adoption proceedings.

John Paul Allen Kozak was born on July 14, 1978. On July 19, 1978, his mother and her husband filed a petition in the probate court to terminate their parental rights, to identify the natural father of the child, and to determine or terminate his rights.

The mother stated in a declaration that,

"I am not able to determine the identity and/or whereabouts of the father of my child. I had been

---

* Circuit judge, sitting on the Court of Appeals by assignment.

drinking with girlfriends from work in a bar downriver in the Algonac area and left with a person unknown to me or to my friends, which resulted in my pregnancy."

On July 31, 1978, the court accepted the release of the child and terminated the rights of the unknown natural father. The child was placed with defendant Catholic Social Services to await adoption or suitable placement. On September 28th, the child was made a ward of the probate court and placed with unidentified prospective adoptive parents.

An affidavit of Interest and Acknowledgement of Paternity was filed by plaintiff on October 16, 1978. On November 20th, plaintiff filed a petition for hearing on custody and for an ex parte order staying adoption proceedings, alleging again that he was the natural father of the child and desired custody. He claimed that he had received no notice of the court proceedings, and that the child's mother and her husband had given false testimony to the court concerning the identity of the child's father. The probate judge denied the plaintiff's request for hearing.

Initially, the court stated that the July 31st order terminating parental rights was res judicata. The doctrine of res judicata bars the relitigation of issues in subsequent actions. It is a prerequisite that the former adjudication must have been between the same parties or their privies. *Bousson v Mitchell*, 84 Mich App 98, 101; 269 NW2d 317 (1978). The doctrine does not bar a request for rehearing nor can the plaintiff be regarded in any real sense as a "party" to the earlier proceeding.

The family relationship occupies a basic position in our society's hierarchy of values, and is of great importance. The fundamental nature of parental rights is a liberty protected by the due process

clause of the Fourteenth Amendment. *Reist v Bay Circuit Judge,* 396 Mich 326; 241 NW2d 55 (1976).

The due process requirements when a legal adjustment of this constitutionally protected relationship is made have been codified in the Michigan Adoption Code. The rights to notice and a hearing are among those extended to a putative father. MCL 710.1 *et seq.;* MSA 27.3178(541) *et seq.*

As a general rule, statutes requiring service of notice to parents must be strictly construed. *Armstrong v Manzo,* 380 US 545; 85 S Ct 1187; 14 L Ed 2d 62 (1965), *Young v Smith,* 191 Tenn 25; 231 SW2d 365 (1950).

MCL 710.37(2); MSA 27.3178(555.37)(2) allows the court to terminate the rights of the putative father where he cannot be identified if a "reasonable effort" has been made to locate and identify him. What constitutes a reasonable effort is not discussed herein. We rather focus our inquiry on the claim of fraud, balancing the constitutionally protected interests with the statutory procedural requisites.

Numerous jurisdictions have held that an adoption decree obtained through fraud, undue influence, duress or mistake may be set aside. *In the Matter of the Adoption of Lori Gay W,* 589 P2d 217 (Okla, 1978), *In re Kerr,* 547 SW2d 837 (Mo App, 1977), *Davis v Turner,* 337 So 2d 355 (Ala App, 1976), *Regenold v Baby Fold, Inc,* 68 Ill 2d 419; 12 Ill Dec 151; 369 NE2d 858 (1977).

As stated in *In re K W V,* 92 Misc 2d 292; 399 NYS2d 593, 595 (1977),

"Adoption, following termination of natural parental status, is final and not subject to abrogation except for defects such as fraud or newly discovered evidence."

See also *In re Welfare of Alle,* 304 Minn 254; 230 NW2d 574 (1975), and *Petition of Foley,* 123 Colo 533; 232 P2d 186 (1951).

In Michigan, the courts have been extremely reluctant to set aside adoptions. *Knox v Reid,* 8 Mich App 199; 154 NW2d 3 (1967). However, the Michigan Supreme Court in *In re Leach,* 373 Mich 148; 128 NW2d 475 (1964), found that an adoption could be overturned if a case of significant fraud could be made out.

In *Beatty v Brooking,* 9 Mich App 579, 584; 157 NW2d 793 (1968), this Court held that where the time for appeal has passed relief may be granted to set aside fraudulent proceedings. The fraud which justifies equitable interference with a probate order must be fraud in obtaining the order and not merely constructive, but positive, fraud.

Defendant places much emphasis on the assumption that a termination order is irrevocable following the expiration of the 20-day period provided by MCL 710.64; MSA 27.3178(555.64).

This same issue was raised in *In re MacLoughlin,* 82 Mich App 301; 266 NW2d 800 (1978), wherein appellant commenced an action to set aside a probate order of termination three years after its issuance. There the Court, in remanding for a hearing on the motions, stated, at 310, that,

"Public policy does favor the certainty and permanence of probate court adoption orders. However, public policy does not favor the securing of such orders by fraud on the petitioner or upon the court. Since fraud upon both the petitioner and the court is alleged by the petitioner, it would appear that the court should at least hear the basis for these claims and inquire into their validity at an appropriate hearing."

Defendant's argument alleging laches on the part of the plaintiff is equally untenable.

"The doctrine of laches is elastic, and rightly so, for it must cover the situation before the court after the facts are presented, and here, since there has been no opportunity to present proof, the statement by the court that laches applies would appear inappropriate.

" 'A defendant should not be heard to interpose the defense of laches where the claim against him arises from his own fraud and where * * * the very success of his fraud places the aggrieved parties in temporary ignorance of their rights and thus causes the lapse of time occurring prior to the assertion of the claim. *Chase v Boughton,* 93 Mich 285, 302; 54 NW 44, 50 (1892). And so, where the equitable claim arises from the fraud of the defendant the defense of laches must fall with the proof of the fraud since the defendant may not thereafter lift himself by his own bootstraps of wrongdoing.' *Kita v Matuszak,* 55 Mich App 288, 295-296; 222 NW2d 216 (1974)." *In re MacLoughlin, supra,* at 307-308.

This case is remanded for a hearing[1] pursuant to MCL 710.39; MSA 27.3178(555.39). The probate court, in evaluating the best interests of the child, is directed for guidance to *In the Matter of Baby Boy Barlow,* 404 Mich 216; 273 NW2d 35 (1978), and *In the Matter of Robert P,* 36 Mich App 497; 194 NW2d 18 (1971).

Reversed.

---

[1] The expanded jurisdiction of the probate court should also be considered in this matter. Compare the repealed language of MCL 701.19(4); MSA 27.3178(19)(4) with MCL 700.22; MSA 27.5022.