FAWCETT v. ATHERTON.

1. JUDGMENT—EQUITY—PERJURY.
   Perjury is not ground for equitable relief against judgment resulting from it.

2. SAME—EQUITY—FRAUD—PERJURY.
   Fraud which warrants equity in interfering with a judgment must be fraud in obtaining the judgment and must be such as prevents the losing party from having an adversary trial of the issue and since perjury is not such a kind of fraud and public policy demands that there be an end to litigation, neither perjury nor forgery constitutes sufficient ground for equitable interference.

3. WORKMEN'S COMPENSATION—PERJURY—EQUITY.
   Alleged perjury of claimant for compensation as to physical condition previous to accident *held*, an insufficient basis upon which to grant equitable relief from award of compensation by department of labor and industry (2 Comp. Laws 1929, § 8452, as amended by Act No. 15, Pub. Acts 1934 [1st Ex. Sess.]).

Appeal from Iron; Bell (Frank A.), J. Submitted April 17, 1941. (Docket No. 75, Calendar No. 41,589.) Decided June 30, 1941.

Bill by Franklin Fawcett and United States Fidelity & Guaranty Company against Frank Atherton to enjoin the enforcement of a workmen's compensation award and the procurement of judgment thereon, on the ground of perjury. Bill dismissed. Plaintiffs appeal. Affirmed.

*Denis McGinn* (*N. C. Spencer,* of counsel), for plaintiffs.

*Richard W. Nebel* (*Glenn W. Jackson,* of counsel), for defendant.

BUSHNELL, J. Plaintiffs filed a bill of complaint praying that defendant Atherton be permanently enjoined from enforcing an award of the department of labor and industry and from seeking a judgment on the basis of the award under 2 Comp. Laws 1929, § 8452, as amended by Act No. 15, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1940, § 8452, Stat. Ann. § 17.187).

By their bill and 11 affidavits attached thereto, plaintiffs alleged that although Atherton had been suffering from and treated for heart trouble for some 30 years past, being long prior to his claimed injury of February 13, 1931, this fact was unknown to plaintiffs until the spring of 1939; that he fraudulently concealed his true medical history from the doctors who testified at the department's hearings and claimed, on the contrary, that prior to the accident he had been an able-bodied man. They further averred that the physicians who testified for Atherton based their conclusions upon the medical history given them and that the department of labor and industry relied upon false testimony in making its award. Also, it is charged that Atherton produced at least one medical witness who testified falsely as to his training and qualifications. Plaintiffs claim that, because of Atherton's failure to give the true facts regarding his previous physical condition to his employer and the insurance carrier, he thereby perpetrated a fraud upon them and the department.

Atherton filed a motion to dismiss in which he asserted that plaintiffs were guilty of laches because they had from the entry of the deputy commissioner's order allowing further compensation on February 21, 1935, to the date when the department finally disposed of this petition on August 26, 1938, to ascertain the facts and circumstances which would throw light upon the issue as to whether he had pre-

viously suffered from heart trouble; that plaintiffs were not prevented by him from making a full and complete defense; that the bill filed in the instant case does not show that plaintiffs relied upon the testimony of the medical expert who they now claim testified falsely; that the bill on its face does not show that Atherton's medical witnesses were misled in any way by his claimed false testimony; and, even if it be assumed for the purpose of the motion that his testimony was wilfully false, this furnishes no ground for relief.

Various aspects of Atherton's claim for compensation have been before this court in *Fawcett* v. *Department of Labor and Industry*, 282 Mich. 489, and *Atherton* v. *Fawcett*, 294 Mich. 436. In denying Fawcett's motion for leave to take newly discovered evidence, the court said in the latter case:

"If plaintiff, by false testimony, obtained an award to which he was not in fact entitled, the remedy, if any, is in a court of equity."

In granting defendant's motion to dismiss plaintiffs' bill of complaint, the trial court applied the rule laid down in *Columbia Casualty Co.* v. *Klettke*, 259 Mich. 564. In that case defendant had received compensation on the ground that she was the widow of the deceased employee and her award had been affirmed in *Klettke* v. *C. & J. Commercial Driveaway*, 250 Mich. 454. The insurer sought to set aside this award on the ground of perjury and appealed from the dismissal of its bill. This court said:

"It is now conceded by her there was no ceremonial marriage between her and Henry Klettke. In this suit she claimed a common-law marriage and gave proof tending to sustain her claim, which proof plaintiff asserts falls far short of sustaining a legal marriage. It claims her false testimony before the

department of labor and industry was perjury and constituted such a fraud upon that department as to justify the interposition of a court of equity in granting relief. Perjury is not uncommon in courts. In almost every case there are disputed facts. Courts, juries, and administrative tribunals are constantly called upon to weigh testimony, pass upon the credibility of witnesses, and determine, in legal controversies, who has told the truth. Though the authorities are not agreed, this State is committed to the rule, stated in Pomeroy's Equitable Remedies (2d Ed.), § 656, published as Pomeroy's Equity Jurisprudence (4th Ed.), § 2077, as follows:

" 'The courts hold that perjury is intrinsic fraud and that therefore it is not ground for equitable relief against a judgment resulting from it. We have seen that the fraud which warrants equity in interfering with such a solemn thing as a judgment must be fraud in obtaining the judgment, and must be such as prevents the losing party from having an adversary trial of the issue. Perjury is a fraud in obtaining the judgment, but it does not prevent an adversary trial. The losing party is before the court and is well able to make his defense. His opponent does nothing to prevent it. This rule seems harsh, for often a party will lose valuable rights because of the perjury of his adversary. However, public policy seems to demand that there be an end to litigation. If perjury were accepted as a ground for relief, litigation might be endless; the same issues would have to be tried repeatedly. As stated in a leading case, "the wrong, in such case, is of course a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is, that a final judgment cannot be annulled merely be-

cause it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again *ad infinitum."* And to use the language of an eminent court, "the maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence and cannot be contradicted."

" 'In accordance with the principles laid down above, it is held, by the weight of authority, that neither perjury nor forgery is sufficient ground for equitable interference.'

"The principles of the text above quoted have been approved by this court. *Gray* v. *Barton,* 62 Mich. 186; *Codde* v. *Mahiat,* 109 Mich. 186; *Steele* v. *Culver,* 157 Mich. 344 (23 L. R. A. [N. S.] 564). We reaffirm such approval."

The rule as thus stated in the *Klettke Case* is in harmony with *United States* v. *Throckmorton,* 98 U. S. 61 (25 L. Ed. 93), and is the rule followed in the majority of the States and England. See 126 A. L. R. 392. This rule is:

"the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." *United States* v. *Throckmorton, supra,* 68.

We are not unmindful of the criticisms that have been directed at the harshness of this rule and the reasons advanced in its support. See opinion of Judge CLARK, in *Publicker* v. *Shallcross* (C. C. A.),

106 Fed. (2d) 949 * (126 A. L. R. 386), citing 22 Harvard Law Review, 600, 49 Harvard Law Review, 327, and 21 Columbia Law Review, 268.

Plaintiffs rely chiefly on *Chicago, R̊. I. & P. R. Co.* v. *Callicotte* (C. C. A.), 267 Fed. 799† (16 A. L. R. 386). The *Callicotte Case* is distinguishable on its facts from the case at bar and is characterized in the annotation in 16 A. L. R. 397, as an exception to the general rule.

On the record in the case at bar we are not disposed to deviate from the rule long established in Michigan as stated in *Columbia Casualty Co.* v. *Klettke, supra.*

The order dismissing plaintiffs' bill of complaint is affirmed, with costs to appellee.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., took no part in this decision.